## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————

| | |
|---|---|
| SHAWN BULIFANT, GARY HUGHES, DANIEL LOPER, JAMES MCCLINTOCK, and CHRISTOPHER VERNON, | 1:14-cv-07384-NLH-JS |
| | **OPINION** |
| Plaintiffs, | |
| v. | |
| DELAWARE RIVER AND BAY AUTHORITY, | |
| Defendant. | |

———————————————————

**APPEARANCES**:

NEELIMA VANGURI
WILLIAM RIESER
LAW OFFICES OF SIDNEY L. GOLD & ASSOCIATES
1835 MARKET STREET
SUITE 515
PHILADELPHIA, PA 19103
     On behalf of plaintiffs

WILLIAM F. COOK
WILLIAM M. TAMBUSSI
CHRISTOPHER ALBERT REESE
BROWN & CONNERY
360 HADDON AVENUE
WESTMONT, NJ 08108
     On behalf of defendant

**HILLMAN**, District Judge

Plaintiffs Shawn Bulifant, Gary Hughes, Daniel Loper, James McClintock, and Christopher Vernon allege age discrimination and retaliation by defendant Delaware River and Bay Authority ("DRBA") under the Age Discrimination in Employment Act, 29

U.S.C. § 621, et seq. ("ADEA").  Plaintiffs allege that they were not hired for permanent full-time positions on the Cape May-Lewes Ferry due to their age or in retaliation for complaining about age discrimination.  Presently before the Court is the motion of DRBA for summary judgment on plaintiffs' age discrimination and retaliation claims.  For the reasons expressed below, DRBA's motion will be granted.

<u>**BACKGROUND**</u>

DRBA is a bi-state agency that was created in 1962 by an interstate compact between the states of New Jersey and Delaware.  DRBA is responsible for operating the Cape May-Lewes Ferry.[1]  The Cape May-Lewes Ferry is an approximately 17-mile, 85-minute trip between Cape May, New Jersey and Lewes, Delaware.  The Ferry operates 365 days per year, subject to weather conditions and other factors, and consists of three vessels: the M/V Jersey, the M/V Delaware, and the M/V Henlopen.  For any given Ferry trip between Cape May and Lewes, the boat will be staffed by DRBA crew members.  The crew members for a Ferry trip will include the positions of Captain, Pilot, Boatswain, Able-Bodied Seaman, Ordinary Seaman, Chief Engineer, and Assistant

---

[1] DRBA also operates the Delaware Memorial Bridge, the Forts Ferry Crossing, the Salem County Business Center, and five regional airports, including the New Castle Airport, the Civil Air Terminal at Dover Air Force Base, and the Delaware Airpark in Delaware as well as the Millville and Cape May Airports in New Jersey.

Engineer.  Each Ferry trip will typically include several Able-Bodied Seamen, or AB, and Ordinary Seamen, or OS.

In the winter, the Ferry will have four crews to staff its vessels, with each crew consisting of ten permanent employees. The Ferry's busy season is Memorial Day through Labor Day, during which time the Ferry will supplement its permanent full-time crew with seasonal employees.  Seasonal employees hired by the DRBA for the Ferry's busy season will usually be seasonal Able-Bodied Seaman and seasonal Ordinary Seaman.

Generally, seasonal employees at DRBA may work no more than 1000 hours per calendar year, except if there is a demonstrated need.  Seasonal employees at DRBA do not receive health benefits or pension benefits.  Seasonal employees at the Ferry may be assigned to a Ferry crew, or they may be assigned to a "call-in" list where they will fill in for sick or otherwise unavailable employees.  The permanent, full-time Ferry employees who work on Ferry vessels are part of the Ferry's union, the Marine Engineers Beneficial Association, but seasonal employees are not eligible for membership in MEBA.

Plaintiffs were seasonal employees, over the age of 40, who had worked for DRBA for four to seven years as seasonal employees when they applied for three full-time crew positions in 2012 and 2013, but were not hired for any of those positions. Plaintiffs claim that DRBA declined to hired them because they

3

were over 40 years old.[2]  Plaintiffs also claim that their applications were rejected because they sent a letter to DRBA's executive director, Scott Green, in which they complained about age discrimination in DRBA's hiring process.

DRBA has moved for summary judgment on all of plaintiffs' claims, arguing that many are time-barred, and otherwise fail to support their claims that age was the but-for reason in DRBA's hiring choices.  Plaintiffs have opposed DRBA's motion.

## DISCUSSION

### A.  Subject matter jurisdiction

This Court has jurisdiction over plaintiffs' claims for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., under 28 U.S.C. § 1331.

### B.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v.

---

[2] The year of birth of each plaintiff is: Shawn Bulifant, 1957; Gary Hughes, 1951; Dan Loper, 1954; James McClintock, 1959; and Chris Vernon 1970.

4

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague

5

statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

### C.  Analysis

#### 1.  Job postings at issue

The three full-time job postings[3] at issue in this case are as follows:

1.  February 10, 2012 posting for a full-time Ordinary Seaman. Bulifant, Hughes, Loper, and McClintock were four of the fifteen applicants interviewed.  DRBA hired four people whose ages were 23, 27, 31, and 49.

2.  September 13, 2012 posting for a full-time Ordinary Seaman.  All of the plaintiffs interviewed for the position along with twenty-three others.  DRBA hired seven people, whose ages were 24, 27, 33, 36, 52, 53, and 53.

3.  January 24, 2013 posting for a full-time Able-Bodied Seaman, Second Class.  Seventeen applicants were interviewed for the position, including Bulifant, Hughes, Loper, and McClintock. DRBA hired two people whose ages were 22 and 55.

For each of these postings, candidates were interviewed according to the same criteria: functional and technical skills,

---

[3] DRBA's brief describes two internal-only job postings for a full-time OS – November 30, 2011 and January 20, 2012 – that do not form the basis for plaintiffs' claims.  Plaintiffs did not apply for these positions because only full-time employees could apply.  DRBA hired five employees for the two jobs, all of whom were over 40 (male 44, male 49, female 49, male 54, female, 59).

safety, customer service, and peer relationships.  All
candidates are asked the same pre-set questions, and the
interviewers could not deviate from the set questions.  The
interviewers provided a score for each category for each
candidate.  DRBA then generated a detailed report which set
forth the scoring, rankings, and justifications for those hires.

**2.  Whether plaintiffs' claims based on these job postings
are time barred**

Before assessing the particular circumstance of each job
posting, the Court must first determine whether plaintiffs'
claims are time barred.  A Title VII plaintiff raising claims of
discrete discriminatory or retaliatory acts must file his charge
with the EEOC within the appropriate time period - 180 or 300
days - set forth in 42 U.S.C. § 2000e-5(e)(1).  National R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).  If the
EEOC finds that that it sees no reason to take action on the
complaint, it will issue a "right-to-sue" letter.

A complainant cannot file a Title VII suit without having
first received a right-to-sue letter, and the suit must be filed
within 90 days of the date on which the complainant receives the
letter.  Burgh v. Borough Council of Borough of Montrose, 251
F.3d 465, 470 (3d Cir. 2001) (citations omitted).  "Both the
180-day [or 300-day] period for filing the administrative
complaint and the 90-day period for filing the court action are

treated as statutes of limitations." Id.

In deferral states, such as New Jersey and Pennsylvania, the ADEA requires filing of a charge with the EEOC within 300 days, and not 180 days, after the alleged unlawful employment practice occurred. Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992) (citing Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 (3d Cir. 1985) (Pennsylvania); Bihler v. Singer Co., 710 F.2d 96, 97 (3d Cir. 1983) (New Jersey)). The DRBA, however, has not expressly consented to the application of New Jersey's and Pennsylvania's anti-discrimination laws. Spence-Parker v. Delaware River & Bay Auth., 616 F. Supp. 2d 509, 520 (D.N.J. 2009). Thus, unlawful discrimination charges against DRBA must be filed within 180 days of the alleged unlawful practice, because such charges are not subject to either state's own age discrimination law or own authority administering that law. Id.

In this case, plaintiffs' claims arising out of the February 10, 2012 job posting are time barred. The deadline for filing a charge related to this job posting was August 10, 2012.[4] Loper filed his charge of age discrimination on March 25, 2013; Hughes filed his charged on April 3, 2013; McClintock and

---

[4] Even if the 300-day filing deadline (December 8, 2012) was applicable, plaintiffs' claims related to the February 10, 2012 job posting would be barred.

8

Bulifant filed their charges on May 6, 2013; and Vernon filed his charge on October 7, 2013.[5]  Thus, the Court may only assess plaintiffs' age discrimination and retaliation claims related to the September 13, 2012 and January 24, 2013 job postings.

> **3.  Whether plaintiffs have provided direct or circumstantial evidence of age discrimination relating to the September 13, 2012 and January 24, 2013 job postings.**

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009).  A plaintiff can prove his age discrimination claim through direct or circumstantial evidence.

Under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must first establish a prima facie case of discrimination, which creates an inference of unlawful discrimination.  Willis v. UPMC Children's Hosp. of

---

[5] Vernon's claims relating to the September 13, 2012 and January 24, 2013 job postings are also time barred.  Moreover, his charge with the EEOC only concerned age discrimination and not retaliation.

Pittsburgh, 808 F.3d 638, 643–45 (3d Cir. 2015).  The elements of a prima facie case of age discrimination[6] are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.  Id. (citations omitted).

Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must articulate a legitimate nondiscriminatory reason for the adverse employment action.  Id. (citations omitted).  This second step of McDonnell Douglas does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action, but instead the employer must provide evidence that will allow the factfinder to determine

---

[6] Retaliation claims brought for violations of the ADEA follow a similar burden shifting analysis, with only a slight alteration to the elements of the prima facie case.  See Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) (quoting Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)) ("'Under the McDonnell Douglas framework, a plaintiff asserting a retaliation claim first must establish a prima facie case by showing (1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'").

that the decision was made for nondiscriminatory reasons.  Id.
(citations omitted).

If the employer satisfies this second step, the burden
shifts back once more to the plaintiff to show, by a
preponderance of the evidence, that the employer's proffered
legitimate, nondiscriminatory reason was pretextual – that not
only was the employer's proffered reason false, but the real
reason was impermissible discrimination.  Id.  This can be done
in two ways:  (1) by pointing to evidence that would allow a
factfinder to disbelieve the employer's reason for the adverse
employment action by showing such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons, or (2) by pointing to
evidence that would allow a factfinder to believe that an
invidious discriminatory reason was more likely than not a
motivating or determinative cause of the employer's action,
which can be shown by (1) the defendant having previously
discriminated against the plaintiff; (2) the defendant having
discriminated against others within the plaintiff's protected
class; or (3) the defendant has treated similarly situated,
substantially younger individuals more favorably.  Id.
(citations and quotations omitted).

In contrast to circumstantial evidence, direct evidence of
discrimination is so revealing of discriminatory animus that it

11

is unnecessary to rely on the McDonnell Douglas burden-shifting framework.  Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 269 (3d Cir. 2010).  Once a plaintiff produces such evidence, the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus.  Id. (citation omitted).  To qualify as direct evidence, the evidence must be such that it demonstrates that the decision-makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.  Id.

Direct evidence must satisfy two requirements:  (1) the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the defendant's decision; and (2) the evidence must be connected to the decision being challenged by the plaintiff.  Id. (citations omitted).  Moreover, any statements made by a defendant's employees must be made at a time proximate to the challenged decision and by a person closely linked to that decision.  Id. (citation omitted).  These requirements are a high hurdle for plaintiffs.  Id. (citation omitted).

Plaintiffs argue that the following pieces of direct evidence that support their age discrimination claims:

(1)  Loper testified that after the February 10, 2012 job posting, the result of which DRBA hired a 23 year old female and

12

males ages 27, 31, and 49, the ship captain Stan Hansen said,
"Dan, it's a young man's game now . . . that's the young coming
in."  (Docket No. 24-13 at 28.)

(2)  Loper testified that six months to a year before his
deposition on September 9, 2015, Captain Dave Macomber told him
that another captain, Pete Dudley, told Macomber that Dudley no
longer wanted to be on the interview panel because people in the
office were changing the panel members' scores in favor of
younger, less qualified people.  (Docket No. 24-13 at 26.)

(3)  The combined scoring sheet for the February 10, 2012
job opening has notations of the applicants' age only for seven
of the fifteen individuals interviewed, including plaintiffs
Hughes, McClintock, Bulifant, and Loper.  The ages next to the
other three interviewees were 60, 50, and 30.  There is no
notation next to the individuals hired, three of whom were under
40, and three other candidates whose ages were unknown.
Plaintiffs claim that these notations were made by Sue Polak,
DRBA's human resources representative.  (Docket No. 29-12 at 1.)

(4)  Another copy of the combined scoring sheet for the
February 10, 2012 job opening contains notations of all the ages
of the interviewees written down by an "unknown scrivener."
(Docket No. 29-13 at 1.)

(5)  The combined scoring sheet for the September 2012 job
posting has handwritten notations of the ages of each

13

interviewee by an "unknown scrivener."  The score sheet contains summaries of all the interviews and the interviewers' impressions, with the notes for 24 year old hired candidate referring to his youth.  (Docket No. 29-21 at 1-5.)

(6)  DRBA's administrative assistant, Peggy McCann, coached younger individuals prior to their interviews, but she never coached any of the plaintiffs or other older individuals.

None of this evidence supports a finding that DRBA failed to hire plaintiffs for the September 13, 2012 or the January 24, 2013 job postings because of their age.[7]  First, putting aside the hearsay issues with Loper's testimony about the alleged statements of three captains, two of whom were not deposed in this case,[8] and even accepting those statements as true, such

---

[7] Even though the Court recognizes that "freedom from discrimination is an individual rather than a group entitlement," Simpson v. Kay Jewelers, 142 F.3d 639 (3d Cir. 1998) (citations and quotations omitted), and the Court is obligated to assess each plaintiffs' claims of age discrimination and retaliation independently, because plaintiffs' proof is presented collectively for all plaintiffs instead of individually, the Court will perform its analysis in more global fashion.

[8] In its reply, DRBA submitted a certification of Peter Dudley, the captain of the Cape-May Lewes Ferry for DRBA.  He states, "At no point in time did I inform anyone that I was no longer sitting on interview panels.  In fact, I have sat on several interview panels following the January 24, 2013 interview process."  (Docket No. 32-3 at 3.)

Plaintiffs take issue with the propriety of DRBA providing the certifications of Dudley, along with certifications of Sue Polak, and Gregory Chambers, see infra notes X and X, in its

stray remarks temporally removed from the September 13, 2012 or the January 24, 2013 job postings cannot support a finding that age was more likely than not a motivating factor in DRBA's hiring decision in September 2012 and January 2013.

Sometime shortly after February 10, 2012, Stan Hansen said "it's a young man's game now," and sometime in September 2014 or after Dave Macomber told him that Pete Dudley no longer wanted to be on the interview panel because people in the office were changing the panel members' scores in favor of younger, less qualified people.  One alleged comment occurred seven months before the September 2012 posting, and ten months before the January 2013 job posting.  The other alleged comment occurred a year and nine months after the January 2013 job posting, and two years after the September 2012 job posting.  "'Stray remarks   .

---

reply brief, arguing that it is procedurally improper and such evidence should have been provided in DRBA's moving papers. Plaintiffs also argue that the Court should credit plaintiffs' version of the issues over the version contained in these certifications because they are the non-moving party.  The Court notes the existence and contents of these certifications, but the Court does not rely upon them in its analysis of plaintiffs' claims.  The Court further notes, however, that in opposing a summary judgment motion, a plaintiff cannot make unsupported statements attributed to witnesses whom the plaintiff has not deposed or otherwise sought affidavits from, and then argue that the defendant's rebuttal of those unsupported statements should be ignored by the Court and weighed in plaintiffs' favor.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

. . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.'"  Geltzer v. Virtua W. Jersey Health Sys., 804 F. Supp. 2d 241, 247 (D.N.J. 2011) (quoting Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994)) (other citation omitted).[9]  Such is the case here.

---

[9] Plaintiff rely upon Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir. 2002) to support their contention that the comments by the two captains constitute direct evidence of age discrimination. The court in Geltzer v. Virtua W. Jersey Health Sys., 804 F. Supp. 2d 241, 247 (D.N.J. 2011) rejected an identical argument:

> [The interview panel member] Grigioni's lone comment that Geltzer did not "want" a full time position because he was "getting old"—which occurred before Geltzer had even applied or interviewed for a full-time position—is insufficient evidence to support a conclusion that but for Geltzer's age, Virtua would have hired him for a full time position and would not have fired him.

> Geltzer's reliance on Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir.2002) is misplaced. In Fakete, the Third Circuit reversed the grant of summary judgment to an employer in an ADEA case based on a single conversation where Fakete's supervisor stated that, after a recent corporate reorganization, he was "looking for younger single people" and that consequently Fakete "would not be happy there in the future." Fakete, 308 F.3d at 336. Geltzer thus analogizes his case to Fakete, arguing that Grigioni's comment is very similar to the supervisor's comment to Fakete. However, even if this Court assumes arguendo that the comments are substantially similar, Fakete was decided before [Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)].  Fakete's holding is clear: "a reasonable jury could find, based on [the supervisor's] statement, that Fakete's age was more likely than not a substantial factor in [the supervisor's] decision to fire him." 308 F.3d at 339.  After Gross, the bar is higher.  It is not sufficient to establish that age was a substantial motivating factor in Virtua's decisions with regard to Geltzer.  See Gross,

16

As for the score sheets, plaintiffs contend that the notations of "unknown scriveners" and of a human resources

---

129 S.Ct. at 2350 ("Our inquiry must therefore focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not."). As stated before, Geltzer must prove that but for his age, Virtua's decisions would have been different. His evidence cannot satisfy this standard.

Geltzer v. Virtua W. Jersey Health Sys., 804 F. Supp. 2d 241, 247-48 (D.N.J. 2011). This Court rejects plaintiffs' reliance upon Fakete for the same reasons.

Plaintiffs also rely on this Court's decision in Natale v. E. Coast Salon Servs., Inc., No. CIV.A. 13-1254, 2014 WL 4854442, at *2 (D.N.J. Sept. 30, 2014), which the Court finds distinguishable to the case here. In Natale, the Court denied summary judgment on a plaintiff's age discrimination claim and found that it was for the jury to decide whether a supervisor's comments towards the plaintiff based on age was circumstantial evidence of a decision to terminate based on age discrimination, or whether they were just stray remarks. The remarks, which her employer denied, included that plaintiff was wearing "old lady pull up pants," (a reference to plaintiff's jeans with an elastic insert); that she told plaintiff a couple times that she "would look younger if (her) nails were squared off"; that she would be sent home for wearing "old lady shoes"; that when plaintiff showed a new pair of sneakers, she was told "Don't wear those in here. You look like a retarded old nurse."; that plaintiff was "old enough to be her grandmother" after plaintiff said she was not "trying to be her mother" in discussing personal matters. The case also included claims that her hours were cut to the benefit of a younger employee, and that defendant hired a substantially younger replacement about a week before plaintiff was terminated. Natale, 2014 WL 4854442, *4. The Court denied summary judgment not simply because remarks about a plaintiff's age were at issue in the case. The nature of these remarks, whether they were even said, and whether plaintiff's age was the true reason for her termination, were subject to credibility determinations the Court could not make, thus requiring the submission to the jury. The same scenario is not present here.

17

representative evidence that age was a determinative factor in hiring.  Putting aside the fact that two of the score sheets are for the February 2012 job posting, and plaintiffs' claims relating to that job posting are time barred, plaintiffs have not set a foundation for the authentication and admissibility of those documents.  Plaintiffs did not depose Sue Polak and ask her if she made those notations, and if so, when and for what purpose.[10]  The markings of "unknown scriveners" are even less probative or demonstrative of any age discrimination.[11]  The burden of proof for authentication is slight, and "[a]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be."  McQueeney v. Wilmington Trust Co., 779 F.2d 91684 (3d Cir. 1985).  Plaintiffs have not met this most basic requirement.  Without any idea of how and when these documents came to have the ages of the interviewees, the Court cannot

---

[10] DRBA also includes a certification of Sue Polak, who states, "Had plaintiffs taken my deposition in this matter, I would have explained that the handwritten notes on DRBA l0924 were not placed on the document until after the June 8, 2012 meeting [with Scott Green and Loper] for purposes of following up on the meeting."  (Docket No. 32-4 at 4.)

[11] In its reply, DRBA explains that the "unknown scriveners" might be EEOC employees, because the documents were obtained in response to a subpoena to the EEOC.  (Docket No. 32 at 10 n.10.)

consider them as evidence of anything, let alone direct evidence of age discrimination.[12]

With regard to the comment on the interview of a 23-year old candidate, the context of the reference to his "youth" is telling.  The comment provides,

> [Candidate] has been a seasonal AB for 3 years and has worked as an OS for a tug company, in commercial fishing and as an OS for shipping companies.  Candidate was very professional and confident, good qualities in a mariner. He indicated that he saw youth as an advantage, commenting "I will advance".  Ranked in the top tier of candidates at #3 – a very good candidate for an OS position.

(Docket No. 29-21 at 5.)  The reference to "youth" is clearly the applicant's efforts of selling himself to a seasoned panel of interviewers.  Ironically, it appears that he perceived his youth to be a detriment rather than a desired trait.  That the

---

[12] Simply because a document exists with ages on it does not automatically evidence discriminatory intent.  See E.E.O.C. v. MCI Int'l, Inc., 829 F. Supp. 1438, 1447 (D.N.J. 1993) (citations omitted) (explaining that documents that "list employees' ages, even documents which relate to a reduction in force, are not per se direct evidence of discrimination and may, indeed, be innocuous"); see also Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 335 (3d Cir. 2000) ("The lists Narin sought to introduce provided the ages of the individuals Lower Merion actually hired. In addition, the lists reflected that Lower Merion hired more individuals younger than forty years of age than older. However, we think these figures could only be probative of discriminatory intent if, at the very least, it also were shown that roughly equivalent numbers of over-forty and under-forty individuals applied for employment with Lower Merion. Otherwise, the lists simply show that Lower Merion hires young individuals—not that Lower Merion hires young individuals to the exclusion of older ones.").

DRBA noted a young applicant's own observation of his "youth" and how he felt it was an advantage does not suggest that the DRBA discriminated against older applicants because of their age.

Finally, an administrative assistant who helped to coach "younger individuals," even if true,[13] is not evidence that she refused to coach plaintiffs because of their age, and by extension, lead to the older applicants' rejection.

Because none of plaintiffs' purported direct evidence infers that a discriminatory attitude was more likely than not a motivating factor in not hiring them for the September 13, 2012 and January 24, 2013 job postings, the Court must undertake the burden shifting analysis to assess all the evidence as a whole with regard to plaintiffs' discrimination and retaliation claims.

Accepting for the purposes of resolving DRBA's motion that plaintiffs have established a prima facie case for their discrimination and retaliation claims, the burden is placed on

---

[13] Contrary to plaintiffs' contention that she never coached them or other older employees, McCann testified that she coached Bulifant, Loper, and Vernon regarding what to wear and to study "SOP's" which the Court assumes to have been a reminder to review applicable work standards and procedures. (Docket No. 29-14 at 52-56.)  She also coached her son, including taking him shopping for an interview suit.  For purposes of this motion, we have assumed the truth of Plaintiff's version of this factual dispute and determine the dispute to be immaterial.

DRBA to articulate a legitimate nondiscriminatory reason for not hiring plaintiffs for the September 13, 2012 and January 24, 2013 job postings.  DRBA explains that for the September 13, 2012 posting, twenty-eight interviews were conducted, a panel of four interviewers comprised of three people over the age of 40 asked the same questions of each candidate, and after averaging the interviewers' scores, a ranking sheet was created.  Seven people were hired, with three of them being over the age of 40.

Even though McClintock ranked 5th and Hughes ranked 6th, and the 7th, 8th, and 9th-ranked candidates, all under 40, were offered the positions instead, DRBA explains that the justification for hiring those other candidates is detailed in the comments section of the scoring chart, and nothing concerns those candidates' ages.  (Docket No. 29-21 at 1-5.)[14]  DRBA also argues that when asked whether these individuals were improperly hired regardless of age, plaintiffs could not explain how their hire was not otherwise justified.

---

[14] Although McClintock and Hughes's rankings and comments reflect positive impressions, so do the other candidates.  Number 7 had first aid and CPR skills and "excellent" safety knowledge, as well as a "100 ton captain license."  Number 8 obtained a relevant professional certification on his own, was "emphatic" about safety, and expressed a desire to remain employed locally. Number 9 was "precise" in her answers to safety questions, and received the highest scores of all candidates from two reviewers on the subject of "Customer Focus" competency.

Similarly, for the January 24, 2013 job postings, seventeen interviews were conducted, a panel of four interviewers comprised of three people over the age of 40 asked the same questions of each candidate, and after averaging the interviewers' scores, a ranking sheet was created.  Two people were hired, with one of them being over the age of 40.   DRBA contends that plaintiffs could not explain how the hiring of these two candidates was not justified.

With regard to plaintiffs' retaliation claims based on the May 29, 2012 letter to the executive director Scott Green,[15] the letter concerned: (1) Blood Borne Pathogen Exposure Control/Hepatitis B Vaccine; (2) Clarification of employment status – part-time vs. seasonal; (3) Opportunity for full-time status and advancement within the DRBA; (4) Fair Pay – payment of wages for performing the same position/duties as a full-time employee with significantly less hourly wage; (5) No performance evaluations received; (6) No cost of living or merit increases in these positions since 2006; (7) Eligibility for Pension/401(k) Plan; and (8) Expectation to be treated with respect and fairness regardless of employment status.  (Docket

---

[15] DRBA disputes that the letter was "protected activity" because there are questions about who drafted and signed the letter. For the purposes of resolving DRBA's motion, the Court accepts that the letter constitutes protected activity sufficient to establish a prima facie case of retaliation.

No. 24-20 at 1-5.)  DRBA argues that the letter does not contain any specific complaints about age discrimination, and that the complaints contained in the letter concerned all seasonal employees, regardless of age.

Having set forth its legitimate, nondiscriminatory reasons for DRBA's employment decisions, it now becomes plaintiffs' burden to show that those reasons were pretextual - that the real reason for their decision was impermissible discrimination based on plaintiffs' ages.  Plaintiffs argue that they were all more qualified for the February 2012 position than the younger people hired.  Plaintiffs contend that the 49 year-old hire was not a ferry employee at the time, and plaintiff Hughes had to train him on how to perform the position; the 27 year-old hire was a painter with limited sea time and was trained by plaintiff Vernon; and the 23 year-old hire did not have experience on boats prior to her selection for the position.  Moreover, two of the interview members testified that plaintiffs were qualified for the position.  Plaintiffs argue that this shows that age was really the motivating factor in DRBA's hiring decision for the February 2012 posting.[16]

---

[16] Even though claims relating to the February 2012 job positing are time barred, the Court will consider plaintiffs' arguments related to this job posting as their attempt to show that DRBA had previously discriminated against plaintiffs or had treated similarly situated, substantially younger individuals more favorably.

Plaintiffs also argue that aside from the combined scoring sheet, there is no other documentation explaining DRBA's hiring decisions, which shows pretext.  Plaintiffs also take issue with the subjective nature of the hiring process, and the credibility of DRBA's witnesses, including Green, who plaintiffs claim lied during his deposition when he said he had not read plaintiffs' letter until he met with Loper.  Plaintiffs assert he read it when he received it by email, as evidenced by his reply to Loper.  Plaintiffs also contend that DRBA never followed up on the letter's request to investigate age discrimination complaints.[17]  Plaintiffs further argue that it is unclear who actually made the hiring decisions, with DRBA saying it is the interview panel and the interview panel saying it is not them, which evidences pretext.

In addition to these alleged pretextual actions by the DRBA, plaintiffs rely upon six charges of age discrimination

---

[17] In contrast to this contention, in its reply brief DRBA includes a certification of Gregory Chambers, the EEO/AA and Diversity Manager, to refute plaintiffs' unsupported contention that DRBA did not investigate plaintiffs' claims.  Chambers, who was not deposed, represents that he performed two separate internal investigations regarding complaints of discrimination that included meeting with the complainants - Loper, Bulifant, Hughes, McClintock and two others - and witnesses.  An attachment to his certification is an April 8, 2013 memorandum to Loper, Bulifant, Hughes, McClintock and two others regarding his investigation into their claims of age and race discrimination.  (Docket No. 4-12.)

24

filed by other employee between March 2013 and August 2013, as well as the evidence they contend constitutes direct evidence, discussed above.

The Court finds that the evidence in the record does not support that age was the but-for reason plaintiffs were not hired for the full-time positions for which they applied. Surveying the landscape of the hiring process from February 2012 through January 2013, sixty people were interviewed, thirteen people were hired, and five of those hired were well over 40 years old (49, 50, 52, 53, 53).[18]  Each of the sixty interviewees were asked the exact same questions regarding functional and technical skills, safety, customer service, and peer relationships.  Each interview panel consisted of DRBA employees who were over the age of 40.  Comprehensive rankings were compiled in each category, and detailed narrative reviews of each candidate were documented in the comments section.

Plaintiffs contend that they were more experienced than many of the younger hires, but the majority of the hires, even the ones plaintiffs argue were less experienced, ranked higher on the score sheets.  The two instances that DRBA hired the 7th, 8th, and 9th ranked candidates over 5th-ranked McClintock and

---

[18] "While not conclusive, an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent."  Ansell v. Green Acres Contracting Co., 347 F.3d 515, 524 (3d Cir. 2003).

6th-ranked Hughes, DRBA noted that they were qualified for the position, but determined to hire the other candidates for reasons not related to age, including a strong emphasis on their focus on safety.  (Docket No. 24-17 at 30-32.)

Even though the hiring process contains an aspect of subjectivity by the employer, and "an employer may not use evaluating criteria which lacks any relationship at all to the performance of the employee being evaluated," a court should "not second guess the method an employer uses to evaluate its employees." Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) (citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) ("Whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide."); Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (citation omitted) ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination."); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("[O]ur inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee."); Logue v. Int'l Rehab. Associates, Inc., 837 F.2d 150, 155 n.5 (3d Cir. 1988) ("[O]ur task is not to assess the overall fairness of [the] ... employer's actions.")).

We recognize that "informal, secretive and subjective hiring practices are suspect because they tend to facilitate the consideration of impermissible criteria," E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 350 (3d Cir. 1990) and like Plaintiffs the Court does not have a crystal clear picture as to who made the ultimate hiring determination.[19]   Nonetheless, the records before the Court are clear that the DRBA's interview procedure was formal, open, objective, and documented.  More importantly, that documentation does not support an inference that the process was pretextual.  Rather it supports the opposite.

For example, with regard to the December 2012 process in which Plaintiffs McClintock and Hughes argue they were "skipped over" for younger applicants, plaintiffs ignore the fact that DRBA hired the first four ranked employees, three of whom were over the age of 50. (Docket No. 29-21 at 1-5.)  Clearly, the rankings were a substantial factor in the hiring decision but if age had been a but-for factor, then it would follow that DRBA would have also "skipped" the number 1 ranked candidate (age 53), the number 2 ranked candidate (age 54) and the number 4 ranked candidate (age 54) instead of hiring them.  In short,

---

[19] The use of a ranking system goes a long way in rebutting allegations of unlawful employment practices.  However, if Defendant uses such a system it would be well advised to document the precise reasons why it might deviate from the rankings in making its ultimate hiring decision or risk on different facts an inference of pretext or discrimination.

Plaintiffs McClintock and Hughes were skipped over but age does

not appear to be the reason why.  Rather, the only rational

inference from DRBA's interviewing procedure and supporting

documentation is that the decision to not hire plaintiffs was

not based on their age.

     With regard to plaintiffs' May 29, 2012 letter to the DRBA

executive director, the record does not connect the act of

sending the letter or the contents of the letter to DRBA's

employment decisions.  The letter presents concerns regarding

vaccinations, unfair pay for part-time employees doing the same

duties as full-time employees, the lack of performance

evaluations, lack of retirement or pension options, and concerns

about hiring new employees who have never worked for DRBA.  As

succinctly stated in the letter, "The problem may be that our

dependability is being exploited and we are being subject to

oppression because of the blatant mismanagement that exists.

What we do not want to believe is that we are victims of

discrimination due to our race, age, or second class status as a

part timer."  (Docket No. 24-20 at 5.)  Clearly, this letter

depicts the discrimination felt by all the part-time DRBA

employees, regardless of age, due to their part-time status.

When viewing the hiring process for the September 2012 and

January 2013 positions, which occurred six to eight months

later, it cannot be found that the reasons for DRBA's hiring

decisions were motivated by discriminatory animus due to plaintiffs' age and their expression of dissatisfaction of DRBA's treatment of them as part-time employees.

Finally, the fact that six other seasonal or part-time employees filed age discrimination charges with the EEOC, without more information as to the nature of their claims, is not evidence that plaintiffs were not hired for full-time positions based on their age.[20] See, e.g., Williams v. Costco Wholesale Corp., 2012 WL 762133, at *7 (N.J. Super. Ct. App. Div. Mar. 12, 2012) (excluding charges filed before the EEOC by three other Costco employees, where the EEOC dismissed all charges, informing the parties that it "[was] unable to conclude that the information obtained establishe[d] violations of the statutes [that it enforces]," and because plaintiff had no

---

[20] DRBA states in its reply brief that the EEOC found that none of the complaints were substantiated. In a sur-reply brief, plaintiffs argue that DRBA's representation of the resolution of the charges is improper because it is not supported by documentation. To support its statement that the EEOC charges were deem unsubstantiated, DRBA's reply brief cites to plaintiffs' opposition brief and Exhibit V. Plaintiffs' brief states that between March 2013 and August 2013, six additional employees filed charges of age discrimination with the EEOC, and cites to Exhibit V. (Docket No. 29 at 46.) Exhibit V is a March 31, 2013 letter to DRBA's EEO/AA and Diversity Manager from Loper, Bulifant, Hughes, McClintock, Vernon, Kyra Jarmon, and Al Laird complaining about age, race, and sexual identity discrimination. (Docket No. 29-23.) The parties do not direct the Court to any EEOC charges by the "six other employees" or the EEOC's resolution of those charges. This is another reason why the purported EEOC charges filed by other employees does not serve as evidence in support of plaintiffs' pretext argument.

personal knowledge of the charges, two of which were filed by employees in warehouses where he did not work and one predated his employment in Union).

A hiring decision adversely affecting an older employee does not become a discriminatory decision merely because a younger person is hired instead.  See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1998) (citation omitted).  "The ultimate inquiry is whether the decision was motivated by the affected employee's age."  Id. (citation omitted).  In this case, plaintiffs' evidence does not show that DRBA's reasons for not hiring plaintiffs for full-time positions were because of their age or complaints about age discrimination.  Plaintiffs may disagree with the wisdom of hiring certain employees without similar experience, but even if DRBA's hiring decisions were not wise, it has not been shown that they were discriminatory.

**CONCLUSION**

Plaintiffs' evidence in this case does not support their claims that they were not hired for full-time positions at DRBA because of their age.  It appears that certain seasonal employees felt unappreciated and undervalued, and unfairly rejected from full-time employment status.  Indeed, plaintiffs informed DRBA that the "part time marine crew at CMLF" are "employees that are dependable, qualified, experienced in the

30

operation of the CMLF, professional and excellent customer service representatives that always strive to give the CMLF all that we have and then some.  Our dependability is being exploited . . . ."  (Docket No. 24-20 at 5.)

The Court does not discount plaintiffs' view that the seasonal and part-time employees were being exploited by DRBA. But, even if DRBA's hiring practices discriminated against the seasonal and part-time staff as a group, the seasonal staff is not a protected class under the law.  Consequently, summary judgment must be entered in DRBA's favor on plaintiffs' age discrimination and retaliation claims.

An appropriate Order will be entered.


Date:   September 29, 2016          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.